September 28, 2005

*Via Facsimile (914) 390-4170*

Honorable William C. Conner
United States District Judge
United States District Court
Southern District of New York
300 Quarropas Street, Room 630
White Plains, New York 10601

Re:   Lumbermens Mutual v. Franey Muha Alliant, Et al.
      Docket No. 04 CV 4376 (WCC)

## LETTER BRIEF IN OPPOSITION TO
## PLAINTIFF'S MOTION *IN LIMINE* TO INTRODUCE
## EVIDENCE AS TO THE "ILLEGALITY"
## OF THE ALLEGHENY BOND

Honorable Judge Conner:

Please accept this letter brief in response to plaintiff Lumbermens Mutual Casualty Corporation's motion *in limine* dated September 29, 2005, seeking an order permitting plaintiff to introduce evidence of the "illegality" of the Allegheny bond and to allow its expert to testify to the same. Despite plaintiff's assertion that defendants' application at the Conference before Your Honor to exclude such evidence was untimely, it is defendant's position that an objection to relevance may be made at any time. And as set forth in detail below, plaintiff's motion to introduce this evidence must be denied.

**Appleton Rule**

Plaintiff contends that the Allegheny Bond was "illegal," based on the fact that Hanover was not permitted to write this bond pursuant to New York's "Appleton Rule" (Insurance Law §1106). In sum, in New York, multi-line insurers are not permitted to issue financial guaranty bonds.[1] Under the Appleton rule, a foreign insurer authorized to do business in New York is bound not to undertake activities outside of New York that are prohibited for New York domestic insurers.

---

[1] We dispute the fact that the Allegheny Bond qualifies as the type of pure credit enhancement that can be issued solely by a mono-line carrier under New York low. Here, there were multiple contractual considerations that required the issuance of the bond. But we will not address these arguments for the purpose of this letter.

Based on the above, plaintiff contends that Hanover, as a multi-line insurer authorized to do business in New York, is prohibited from issuing a financial guaranty bond. Plaintiff's argument has no application to this case, particularly as applied to Franey.

**This Claim is not Properly Asserted Against Franey**

Franey, acting as an independent insurance producer, had a duty to obtain a surety bond for its client, Adelphia, and presented a bond submission to Hanover seeking a $15.5 million bond guaranteeing payment to Allegheny Communications Connect Inc.

There is no evidence, or even allegation, that the Allegheny Bond was illegal on its face. Instead, there is an allegation that Hanover was unauthorized to issue a bond of this type based on its status in New York. Hanover was in the sole position to assess whether this bond was the type of insurance product that Hanover was eligible to write in any particular market. That information was exclusively under Hanover's control and Franey, as an independent insurance producer, was under no duty or responsibility to assess what Hanover's ability was to issue a particular bond.

It is clearly Hanover's duty to conduct due diligence in underwriting the bond. Franey, as an independent insurance producer, is solely responsible to provide Hanover with truthful and accurate information regarding the bond submission. Defendants previously provided the Court with the testimony of Hanover's bond manager, Dean Pollock (Exhibit "D" to defendants motion for summary judgment) and of Hanover's Vice President of Surety, Richard Van Steenburgh. (Exhibit "E"). **There is no testimony from Hanover that Franey made any misrepresentations or misstatements of fact regarding the Allegheny Bond**, a fact reiterated by Richard Van Steenburgh testified at his *bene esse* deposition on September 30, 2005. [2]

Therefore, Hanover issued the bond under full disclosure from Franey with all relevant facts before it. If Lumbermens had any argument with respect to the "legality" of the bond and if this had any impact on whether this bond fell under the terms of the reinsurance treaty, that argument should have been made against Hanover in the reinsurance arbitration where Hanover was a party. Because Franey is not alleged to have made any misrepresentations to Hanover regarding the bond, it certainly cannot be alleged against Franey here. It would serve solely

---

[2] Because this deposition took place yesterday, the transcript is not yet available for citation.

Hon. William C. Conner
September 30, 2005
Page 3 of 4

to prejudice the defendant, with no probative value whatsoever toward the relevant issues in this trial.

### Appleton rule has no applicability to the Allegheny Bond

The applicability of the Appleton rule has even less relevance, based on the parties involved in the issuance of the Allegheny Bond and the dispute raised regarding the reinsurance treaty.  The Appleton rule is part of New York's comprehensive scheme to protect its public and policyholders, codified in New York's Insurance Law, ultimately designed to protect New York consumers from unscrupulous insurance operators.  *See The City of New York* v. *Britestar Homes Inc.,* 150 Misc. 2d 820.  Here, no New York party interest is involved, and therefore its application is of no consequence.

Hanover is a **New Hampshire** insurance company; Adelphia and Allegheny are **Pennsylvania** based telecommunications companies; and the bond itself was in support of the construction of a fiber optic telecommunications system between **Western Pennsylvania and the Virginia / West Virginia** border.  Therefore, it is a mystery as to how Appleton can have any relevance to these parties.

Notably, even if the Appleton rule was properly applied to this bond, under New York law, "an insurance company's failure to comply with the licensing scheme of this State does not invalidate the insurance contract, but rather subjects the insurer to the available statutory penalties and sanctions that may be imposed by the Superintendent of Insurance" *3405 Putnam Realty Corp. v. Chubb Custom Insurance Company*, 14 A.D.3d 310 (1st Dept. 2005).  Therefore, even if the bond was issued in violation of New York law, the only ultimate consequence would be faced by Hanover with respect to its ability to write insurance in New York.  All obligations under the bond would continue in full force, including Lumbermens duty to pay any loss incurred pursuant to its reinsurance treaty.

### American Re Letter

The letter from American Re letter annexed to Plaintiff's motion carries no weight, as on September 29, 2005, Richard Van Steenburgh testified at his ***bene esse*** deposition that the bond was not illegal and that American Re abandoned its original position that the Allegheny bond "may be a prohibited class under the NY Financial Guarantee Law" and made payment to Hanover under its separate reinsurance agreement.  Plaintiff will be unable to produce any evidence to the contrary and therefore at this point, the Court should give no effect to this letter.

Hon. William C. Conner
September 30, 2005
Page 4 of 4


Thank you for your consideration of this matter.

Sincerely,


**<u>Michael A. Bono</u>**
Michael A. Bono (MB 4776)
WADE CLARK MULCAHY
*Attorney* for Defendants
Franey Muha Alliant, *et al.*
Wade Clark Mulcahy
111 Broadway
New York, New York  10006

cc:     John W. Dornberger, Esq.  *Via Facsimile 215.320.4705*
        Gary Wilson, Esq. - *Via Facsimile 215.320.4705*

K:\3668\oc\Letter to ct opp to illegal bond.doc